Opinion of the court delivered by
Judge Catron.
(Whyte, Judge, absent.) By the 8th article of the treaty of 1817, it is provided, that to each head of an Indian family, who may wish to become a citizen of the United States, the United States do agree to give six hundred and forty acres of land, to include his improvement, which is to be as near the centre as practicable.
The treaty of 1817, was prospective in its operation, contemplating a cession on the part of the Cherokees, of all their claim to territory east of the Mississippi, and much was to be done to execute.the treaty. It was supposed by the Cherokees to operate harshly on them, and to put an end to its future effects, the treaty of 1819 was made. This treaty spoke in the present,' and its main scope and object was to act upon the state of things as they then were. Instead of allowing to each head of an Indian family, residing on the east side of the Mississippi, six hundred and forty acres, it allofved to each head of an Indian family upon the territory then ceded to the United States, that quantity. The second article of the treaty of 1819, incorporates in effect, the eighth article of the treaty of 1817. Taking them togéther, they vest in each head of an Indian family residing on the ceded territory, six hundred and forty acres in a *439 square, including the improvement of the reservee, which improvement is to be as near the centre as practicable.
The treaty thus vested a right in Mousepaine, to the six hundred and forty acres. It was an inchoate right? subject to be retained or forfeited by him for whose benefit it was made. He had an election, (the United States had none) to divest or alter the title created by the treaty. The treaty then vested in Mousepaine, in severalty, the six hundred and forty acres, which, if he failed to register his name as a reservee with the Cherokee agent, on or before the first day of January, 1820, he forfeited. But if he registered his name, then by force of the treaty, he became, and was a naturalized citizen of the United States. If he failed to do this, he forfeited his right to become a citizen, and his title to the land with it. The registry, if made at any time before the first of January, 1820, vested the title; if not made, the right was forfeited.
A voluntary removal from the land reserved, at any time after the treaty was made, and the title vested, was a forfeiture also. This was a prominent condition of the grant or reservation, and such being the condition attached to Mousepaine’s title, no act on the part of the surveyors and agents of the United States; no act done by the legislature of Tennessee or her agents, could divest this vested right.
It is said, Tubetushie’s reserve interfered with Mouse-paine’s. This could not be. They resided less than a mile apart truly, yet the same land was not granted to both. Joint tenancies, or tenancies in common w'ere' not within the purview of the treaty. The difficulty supposed to exist in this case was foreseen. The six hundred and forty acres was located in reference to the improvement; this alone gave it locality, without which the grant would have been void. The improvement was included, not in the centre, but as near the centre as other adjoining claims would permit. The point equi-distant between the improvements of Mousepaine and Tubctu-shie, is the true boundary between their reserves. To *440 this point the declaration' claims, and to this point the * , , , r treaty vested title.
H. L. White and Lea, for plaintiff in error.
Jarnigan and Church-well, for defendants.
Did Moasepaine voluntarily remove from the Vanit The proof is clear that he was driven from it by force, or by threatening force.
It is supposed a new trial ought to be granted, because proof of the value of improvements was rejected when offered by the defendants. Admitting that a verdict in ejectment could he set aside to let in proof of the value of the improvements, which position I think difficult to maintain, still the notice in this cause was insufficient to justify any such proof. It informs the lessor of the plaintiff, “that on the trial, defendant will introduce proof respecting the value of his improvements on the land in controversy, to wit, dwelling houses, kitchens, smokehouses, stables and other outhouses, and land cleared and fenced.” The particular description, extent and value of the improvements, must be set out as in a declaration this being in fact a cross action.
Judgment affirmed»